IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>          Plaintiff/Counter-Defendant,<br><br>vs.<br><br>CHAD MICHAEL ROAN and BRITTANY NICHOLE ROAN,<br><br>          Defendants/Counter-Claimants. | CV 19-7-BLG-TJC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Nautilus Insurance Company ("Nautilus") filed this action against Defendants Chad Michael Roan and Brittany Nichole Roan (collectively, "Roans"), seeking a declaratory judgment relating to insurance coverage obligations to the Roans and non-parties Dale Rambur and Rambur Construction (collectively, "Rambur"). (Doc. 1.) The Roans filed counterclaims against Nautilus, alleging breach of contract, breach of implied covenant, violations of Montana's Uniform Trade Practices Act, common law bad faith, and malice. (Doc 7 at 5-11.)

Pending before the Court is Nautilus's Motion for Summary Judgment. (Doc. 23.) This matter is fully briefed. (Docs. 24-29.) For the following reasons,

1

Nautilus's motion for summary judgment as to its claim for declaratory relief is **GRANTED**.

I. **Factual Background**[1]

In June 2016, Dale Rambur and/or Rambur Construction hired employees through an employment agency, Advanced Employment Services, to work for Rambur Construction to reroof Rambur's house. (Doc. 1-2 at ¶ 3; *see also* Doc. 26-2.) Defendant Chad Roan and three other workers from Advanced Employment began work on the project on June 9, 2016. (*Id.* at ¶ 4.) Chad and the other workers took direction directly from Rambur's foreman, Kurt Schultz. (*Id.*) While rolling out roofing material, Chad stepped backward off the roof, fell approximately 15 feet to the ground, and sustained bodily injuries. (*Id.* at ¶ 5.)

The Roans subsequently filed a complaint against Rambur in Montana Thirteenth Judicial District Court for Yellowstone County on February 24, 2017, alleging negligence, inherently dangerous activity, and loss of consortium. (Docs. 1-2 at 4-5; 28 at ¶ 6; 22 at ¶ 6.)

At the time of Chad's accident, Nautilus insured Rambur Construction under a Commercial General Liability Policy, policy number NN679954 ("Policy"), effective April 20, 2016 to April 20, 2017. (Doc. 22 at ¶ 5.) Rambur made a claim

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motion for summary judgment; are taken from the parties' submissions; and are undisputed unless otherwise indicated.

under the policy to defend and indemnify Rambur for the Roans' claims. Nautilus issued a denial of coverage on May 19, 2017. (Docs. 7-1; 22 at ¶ 7; 28 at ¶ 11.) Nautilus informed Rambur that "it is Nautilus's position that it has no duty to defend or indemnify Rambur … as it is precluded by the 'Exclusion – Injury to Employees, Contractors, Volunteers and Other Workers' endorsement." (Docs. 7-1 at 1; 28 at ¶ 12.) Nautilus determined that "Roan was either an 'employee,' 'leased worker' or 'temporary worker of Rambur," and thus the Roans' claims were precluded. (Doc. 7-1 at 2. )

The Roans and Rambur subsequently reached a settlement agreement on August 27, 2018, which allowed for entry of a stipulated judgment in the amount of $300,000 against Rambur. (Docs. 22 at ¶ 8; 28 at ¶ 13.) Essential to the stipulated judgment, however, was the agreement "that such judgment shall specifically provide it shall be collected only from the proceeds of insurance policies and insurance coverages applicable to Nautilus Insurance Company." (Doc. 22-1 at ¶ 5(a).) Rambur, for its part, agreed to provide the Roans an executed assignment of rights, title, interest, or claims against Nautilus. (*Id.* at ¶ 6.)

Montana State District Court Judge Donald L. Harris held a reasonableness hearing on the stipulated judgment on February 13, 2019, and ordered the

judgment be entered in favor of the Roans for the stipulated amount on May 7, 2019. (*Id.* at ¶ 9; Doc. 28 at ¶¶ 13, 15.)

## II. Applicable Law

### A. Summary Judgment Standard

A court will grant summary judgment if the movant can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden to submit evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* If the movant meets its initial responsibility, the burden shifts to the nonmoving party to establish a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B. Application of Montana Law

The Court's jurisdiction over this action is based on diversity of citizenship. Therefore, the Court must apply the substantive law of Montana. *In re Cty. of Orange*, 784 F.3d 520, 523-24 (9th Cir. 2015).

It is well-settled in Montana that an insurer's "duty to defend arises when a complaint against an insured alleges facts, which if proved, would result in coverage." *Tidyman's Mgmt. Services, Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014) (*citing Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). In comparing allegations of liability with policy language "to determine whether the insurer's obligation to defend was 'triggered,' a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated." *Staples*, 90 P.3d at 385. The "fundamental protective purpose of an insurance policy," paired with the insurer's obligation to provide a defense, require coverage exclusions to be narrowly construed. *Id*. Therefore, the insurer must "construe the factual assertions from the perspective of the insured." *Id.* The insurer, however, "has no obligation to look beyond the complaint in determining whether a claim is covered by a policy." *Newman v. Scottsdale Ins. Co.*, 301 P.3d 348, 358-59 (Mont. 2013).

The duty to defend arises from the language of the policy. *Grimsrud v. Hagel*, 119 P.3d 47, 53 (Mont. 2005). Without coverage under the policy terms, no duty exists. *RQR Development, LLC v. Atlantic Cas. Ins. Co.*, 2014 WL 6997935, *2 (D. Mont. 2014) (citing *Grimsrud*, 119 P.3d at 53). If there is "an unequivocal demonstration that the claim against the insured does not fall within

5

the insurance policy's coverage," the insurer's duty to defend does not arise. *Staples*, 90 P.3d at 385. On the other hand, if an insurer unjustifiably refuses to defend, the insurer is estopped from denying coverage, and becomes liable for defense costs and judgments. *Tidyman's*, 330 P.3d at 1149. The Montana Supreme Court has "repeatedly admonished insurers" facing a coverage question that if they believe a policy exclusion applies, the prudent course is to "defend the insured and file a declaratory judgment action to discern coverage." *State Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 415 (Mont. 2013).

In Montana, the interpretation of an insurance contract is a question of law. *Scentry Biologicals, Inc. v. Mid-continent Cas. Co.*, 319 P.3d 1260, 1264 (Mont. 2014). A court interpreting an insurance policy is to read the policy as a whole and, to the extent possible, reconcile the policy's various parts to give each meaning and effect. *O'Connell v. Liberty Mut. Fire Ins. Co.*, 43 F.Supp.3d 1093, 1096 (D. Mont. 2014) (*citing Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021 (Mont. 2008)). The terms and words used in an insurance policy are to be given their usual meaning and construed using common sense. *Hardy v. Progressive Specialty Ins. Co.*, 112, 67 P.3d 892, 896 (Mont. 2003). Any ambiguities in the insurance contract are construed against the insurer and in favor of extending coverage. *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 929 (Mont. 2009).

6

"An ambiguity exists when the policy, taken as a whole, is reasonably susceptible to two different interpretations." *Heggem v. Capitol Indem. Corp.*, 154 P.3d 1189, 1193 (Mont. 2007). But a court should not "seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract." *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 474 (Mont. 2005). Moreover, "a court may not create an ambiguity where none exists, nor may a court rewrite an insurance policy by ignoring clear and unambiguous language to accomplish a 'good purpose.'" *Heggem*, 154 P.3d at 1193.

## III. Discussion

Nautilus moves for summary judgment on the basis that it had no duty to defend or indemnify Rambur in claims brought by the Roans. (Doc. 24 at 7.) In opposition, the Roans argue Nautilus had a duty to defend Rambur because Nautilus cannot demonstrate unequivocally that the Roans' claims against Rambur fall outside the Policy. (Doc. 27 at 7.) In the alternative, the Roans argue that if the Roans' claims fall outside of the Policy's coverage, then the Policy itself contains so many exclusions it is rendered illusory. (*Id.*)

### A. Duty to Defend

Rambur's Policy provides in Coverage A that Nautilus will:

> … pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this

7

insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Coverage under this provision is limited by a number of exclusions in the Policy. Relevant here is an exclusion for injuries to employees, contractors, volunteers and other workers, which provides that the insurance coverage does not apply to:

> "Bodily injury" to:
>
> (1) "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or
>
> (2) Any insured's contractors', subcontractors', or independent contractors' "employees," "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors
>
> arising out of and in the course of:
>
>> (a) Employment by any insured; or
>> (b) Directly or indirectly performing duties related to the conduct of any insured's business; or
>
> (3) The spouse, child, parent, brother or sister of that "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker, seasonal worker, contractor, subcontractor, or independent contractor arising out of Paragraph (1) or (2) above.
>
> This exclusion applies:

(1) Regardless of where the:

    (a) Services are performed; or
    (b) "Bodily injury" occurs; and

(2) Whether any insured may be liable as an employer in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(*Id.* at 14-15; *see also* Docs. 1-1 at 37; 28 at ¶ 3.)

Nautilus argues that the Roans' claim unequivocally falls within this policy exclusion. In support, Nautilus points to the allegations in the underlying complaint relative to Chad's engagement to perform services for Rambur Construction. Specifically, Nautilus emphasizes the Roans' allegation that:

> [Rambur] hired employees to work for [Rambur] construction company through an employment agency, Advanced Employment Services. Plaintiff Chad Roan was working as an employee for Advanced Employment Services. Defendant Dale Rambur retained the construction crew with employees hired through Advanced Employment …

(Docs. 1-2 at ¶ 3; 24 at 19.) Nautilus also emphasizes the Roans' allegations that "[d]uring this job all of the employees worked at the direction of Defendant Dale Rambur or his foreman Kurt Schultz," who "told the employees from Advanced Employment how to do the job, provided all the equipment for the job, and directed all activates [*sic*] at the work site." (*Id.* at ¶ 4.)

9

The Roans disagree. They emphasize Nautilus's duty to defend unless there is an unequivocal demonstration that the claim does not fall within the coverage under the policy. The Roans argue that lack of coverage has not been unequivocally shown here, because it is "not clear from the Complaint who Chad Roan was employed by and accordingly, it is also not clear whether the exclusion applies." (Doc. 27 at 14.)

The Court agrees with Nautilus. The Roans' claim clearly falls with the exclusion for injuries to employees and other workers. The exclusion includes "leased workers," which are defined under the Policy to mean "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business." (Doc. 1-1 at 22, ¶ 10.) The allegations of the underlying complaint appear to fall squarely within that definition. It is alleged that Chad was working as an employee of Advanced Employment Services, and that Rambur Construction retained a construction crew with employees hired through Advanced Employment. (Docs. 1-2 at ¶¶ 3-5; 28 at ¶ 7.) But even if Chad was not a leased worker as defined in the Policy, he would fall within one of the other categories of excluded employees, contractors, or workers. (*See e.g. Id.* at 21, ¶ 5; at 24, ¶¶ 19-20.) He was either an employee, a temporary worker, an independent contractor, or volunteer worker. All are excluded under the policy. (*Id.* at 37.) In fact, the Roans have not offered any

10

possible construction of this exclusion, or any possible interpretation of the facts alleged in the underlying complaint, which would conceivably bring the Roans' claim within the Policy's coverage.

Insofar as Brittany Roan's claims are concerned, the Roans alleged that "[a]t the time of the incident described above, the Plaintiffs were married and the Plaintiffs continue to be married today." (Doc. 1-2 at ¶ 9.) Clearly, Brittany is Chad's spouse, and coverage under the Policy is also excluded for any injury to the spouse of any employee, worker, or contractor.

Therefore, Nautilus has unequivocally demonstrated that the Roans' claims do not fall within the Policy's coverage. Even construing the Policy's exclusions narrowly and strictly, as Montana law requires, the Roans' claims fall within the Policy's employee exclusion.

### B. Illusory Coverage

In the alternative, the Roans argue that the Policy itself contains so many exclusions it is rendered illusory; that is, "it provided non-existent coverage for the premium paid by Rambur Construction." (Doc. 27 at 15.) Roans assert that "Chad Roan would have no insurance coverage under the Policy in any situation or circumstance where the highest probability of injury to Mr. Roan would occur resulting from the negligence of Rambur Construction." (*Id.* at 16.)

Nautilus replies that even with the Policy's exclusions, it is obligated to defend Rambur "against claims by almost any other class of claimant aside from one of its workers." (Doc. 29 at 8.) Nautilus agrees with the Roans' assertion that "Chad Roan would have no insurance coverage under the Policy," because "Rambur procured no specific coverage for damages from 'bodily injury' claimed by its workers." In other words, Chad is not an insured under the policy. (*Id.* at 9-10, 11.)

In support, both parties assert *Bennett v. State Farm Mut. Auto. Ins. Co.*, 862 P.2d 1146 (Mont. 1993); *Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892 (Mont. 2003); and *Forsman v. United Financial Casualty Company*, 966 F. Supp. 2d 1091, 1105 (D. Mont. 2013). In *Bennett*, the Montana Supreme Court iterated the public policy "that an insurer may not place in an insurance policy a provision that defeats coverage for which the insurer has received valuable consideration." *Bennett*, 862 P.2d at 1148. In *Hardy*, the Court revisited illusory insurance contracts to "conclude that an anti-stacking provision in an insurance policy that permits an insurer to receive valuable consideration for coverage that is not provided violates Montana public policy." *Hardy*, 67 P.3d at 899. Last, in *Forsman*, the U.S. District Court for the District of Montana concluded that coverage is not illusory simply because a plaintiff can point to a situation in which coverage may be excluded. *Forsman*, 966 F. Supp. 2d at 1105.

*Forsman* is instructive. Simply because Chad Roan's accident is excluded from Rambur's Policy coverage does not mean the Policy as a whole is illusory. The Policy was not issued to cover Rambur's employees, contractors, or others working on Rambur's behalf. It does, however, cover other third-party personal injury or property damage claims which do not fall within the employee exclusion.

Therefore, the Court finds that the Policy exclusion of bodily injury for varying types of workers does not render it illusory.

### C. Roans' Counterclaims

Nautilus further requests that summary judgment be entered with respect to the Roans' counterclaims. Nautilus contends that if it was justified in declining to provide a defense and coverage, it "cannot be liable for claims grounded in either common law or under the UTPA." (Doc. 24 at 33.)

In scheduling this case, however, the parties agreed to a bifurcated process to first determine the coverage issue. (Docs. 15 at 2-3; 21 at 1.) After the resolution of any motions with respect to coverage, it was agreed the Court would convene a status conference to schedule further matters relating to any remaining claims, including discovery, disclosure of experts, and any remaining motions. (*Id.*) The Court will, therefore, schedule a telephonic status conference by separate order to discuss what claims, if any, remain to be resolved in this case, and to schedule any remaining deadlines accordingly.

## IV. Conclusion

Based on the forgoing, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 23) is **GRANTED** as to its claim for declaratory relief and **DENIED** at this time with respect to Roans' counterclaims.

**IT IS ORDERED**.

DATED this 26th day of March, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge